IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANGELA P.,[1] | : | Case No. 3:20-cv-00417 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

**DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on December 30, 2014. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for resolution of several issues. (Doc. 9-3, PageID 175-78.) Upon remand, the ALJ held a second hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. (Doc. 9-2, PageID 56-

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

79.) The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 16), Plaintiff's Reply (Doc. 17), the administrative record (Doc. 9), and the supplemental administrative record (Doc. 10.).

## II.     BACKGROUND

Plaintiff asserts that she has been under a disability since December 1, 2008.[2] She was twenty-nine years old on the SSI application filing date. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a "limited education." *See* 20 C.F.R. § 416.964(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9-2, PageID 56-79), Plaintiff's Statement of Errors (Doc. 13), the Commissioner's Memorandum in Opposition (Doc. 16), and Plaintiff's Reply (Doc. 17). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins December 30, 2014. See 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

### III. STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different

3

conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S FACTUAL FINDINGS

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since December 30, 2014, the SSI application date.

Step 2: She has the severe impairments of lumbosacral degenerative disc disease, cervical degenerative disc disease, carpal tunnel syndrome, right ankle degenerative joint disease, obesity, depression, and anxiety.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 CFR § 416.967(a), subject to the following limitations: "occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs with no climbing of ladders, ropes, and scaffolds. [Plaintiff] should have no work around hazards such as unprotected heights or dangerous machinery. She is limited to frequent use of the hands for handling and fingering, and she is limited to occasion [sic] use of the upper extremities for overhead reaching. [Plaintiff] is able to perform unskilled, simple, and repetitive tasks, but she is limited to jobs with no fast-paced production work or jobs that involve strict production quotas. [Plaintiff] is limited to occasional contact with coworkers and supervisors with no public contact. She is further limited to jobs that involve very little, if any, change in the job duties or work routine from one day to the next."

She has no past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 9-2, PageID 59-79.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 79.)

## V.     LAW AND ANALYSIS

Plaintiff asserts that the ALJ reversibly erred "in evaluating the treating source opinions and medical evidence, including objective raw medical data." (Doc. 13, PageID 1789.) Plaintiff challenges the ALJ's evaluation of the opinion of treating primary care physician, Barbara Bennett, D.O., and the ALJ's RFC. (*Id.* at PageID 1793-96.) These

5

arguments are not well-taken. For the reasons discussed below, the ALJ sufficiently analyzed Dr. Bennett's opinion and the ALJ's RFC is supported by substantial evidence.

### A. Applicable Law

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 416.927 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 416.927(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides…medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 416.927(a)(1). The "treating physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 416.927(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and

6

consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 416.927(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." (*Hargett*, 964 F.3d at 552) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[3]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 416.927(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.920(a)(4)(iv) ("the [ALJ] . . . is responsible for assessing your [RFC]"). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any

---

[3] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed her application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

7

'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." *Id.* (footnote omitted).

    **B.    Dr. Barbara Bennett, D.O.**

Family practice physician Dr. Bennett completed a Basic Medical Form for the Ohio Department of Job and Family Services in March 2016. (Doc. 9-7, PageID 709-10.) Dr. Bennett opined that Plaintiff could stand and/or walk for up to five minutes at a time and for a total of no more than twenty minutes in an eight-hour workday. (*Id.* at PageID 710.) She opined that Plaintiff could sit for up to thirty minutes at a time and for a total of up to one hour in an eight-hour workday. (*Id.*) Dr. Bennett also opined that Plaintiff could lift and/or carry only up to five pounds. (*Id.*) As for postural and manipulative limitations, Dr. Bennett opined that Plaintiff was "extremely limited" in performing repetitive foot movements and "markedly limited" in pushing, pulling, bending, and reaching. (*Id.*) Dr. Bennett indicated these limitations were expected to last twelve months or more. (*Id.*) She additionally indicated that Plaintiff was "unemployable." (*Id.*) Dr. Bennett explained that she based her opinion on a "physical exam [and] consult from Dr. West." (*Id.*)

The ALJ assigned Dr. Bennett's opinion little weight under the "treating physician rule" and reasoned that Dr. Bennett's opinion is not entitled to controlling or deferential weight under the regulations. (Doc. 9-2, PageID 75.) In support of this assignment, the ALJ explained that Dr. Bennett is not a specialist and that she treated Plaintiff "less than five times." (*Id.*) The ALJ cited treatment records from Dr. Bennett and Dr. West, and

8

other objective evidence in the record, and found that the record "does not support the conclusion or the extreme limitations in Dr. Bennett's opinion." (*Id.* at PageID 75-76.)

The ALJ's explanation for assigning such weight is clearly articulated and supported by substantial evidence. The ALJ appropriately weighed the regulatory factors and discounted Dr. Bennett's opinion. 20 C.F.R. § 416.927(c); *Rogers*, 486 F.3d at 242. For example, the ALJ addressed the supportability factor when he compared the opinion to Dr. Bennett's own progress notes and found that "the record does not support . . . the extreme limitations in Dr. Bennett's opinion." (Doc. 9-2, PageID 75.) The ALJ correctly observed that Dr. Bennett's examination reports consistently indicated "no significant abnormalities" and that Dr. Bennett also consistently documented normal ambulation. (*Id.*, citing Doc. 9-8, PageID 1044-58.) This conclusion is supported by substantial evidence.

The ALJ also addressed the consistency factor and found that Dr. Bennett's opinion is inconsistent with other evidence in the record, including Dr. West's report. (Doc. 9-2, PageID 75-76.) Significantly, the ALJ found that Dr. West's report did not actually support Dr. Bennett's conclusion. (*Id.* at PageID 75.) In support of this conclusion, the ALJ summarized Dr. West's records as showing "adequate functioning," and explained that Dr. West "only recommended pain management and physical therapy because he found no evidence of a disc herniation and stated she was not a candidate for surgery." (*Id.* at PageID 75.) This explanation is supported by the ALJ's summary of Dr. West's examination notes earlier in the decision, i.e., that although straight leg raising was positive on the right, findings were negative on the left. (*Id.* at PageID 66, citing

9

Doc. 9-8, PageID 973.) The ALJ also acknowledged that Dr. West's records showed some sensory deficits, but he compared this to other normal findings which included good extensor hallux longus muscle function and the ability to stand on heels and toes. (Doc. 9-2, PageID 65-66, citing Doc. 9-8, PageID 973-77.)

The ALJ further supported his consistency evaluation with references to other evidence of record. (Doc. 9-2, PageID 75-76.) Earlier in his RFC analysis discussion, the ALJ provided a detailed summary of Plaintiff's treatment history for her physical complaints, and he acknowledged examination abnormalities such as tenderness to palpation, decreased range of motion with pain, positive facet loading, and some sensory deficits. (*Id.* at PageID 64-68.) The ALJ also cited many normal findings documented throughout the record, which included normal range of motion, no tenderness, and no pain with flexion or extension, normal reflexes, and normal coordination. (*Id.*) The ALJ compared this evidence to numerous examinations that showed "generally good strength" to further support his conclusion about Dr. Bennett's opinion. (*Id.* at PageID 76, citing Doc. 9-7, PageID 633, 718, 722, 730; Doc. 9-8, PageID 905, 964, 977, 1037-38; Doc. 9-9, PageID 1167, 1237-38, 1259, 1274, 1282; Doc. 9-11, PageID 1673.) The ALJ also cited lumbar spine imaging reports, and he acknowledged that a January 2016 lumbar MRI showed bilateral foraminal stenosis at L5-S1, with some impingement of the L5 nerve roots but with no compression. (Doc. 9-2 at PageID 66.) In his discussion of Dr. Bennett's opinion, the ALJ acknowledged this pathology but explained that a December 2015 EMG study showed no evidence of radiculopathy. (*Id.* at PageID 76.) The ALJ's consistency analysis is supported by substantial evidence.

10

Additionally, the ALJ evaluated the specialization and treatment relationship factors when he explained that Dr. Bennett is not a specialist and that she treated Plaintiff on approximately five occasions. (Doc. 9-2, PageID 75.) The ALJ's conclusions are supported by substantial evidence and so cannot be reversed by this Court.

Plaintiff contends that Dr. Bennett's opinion "is well-supported by medically acceptable diagnostic techniques" because Dr. Bennett explained on the assessment form that she based her opinion on "physical exam, consult with Dr. West, and the lumbar MRI showing bilateral foraminal stenosis and facet arthrosis." (Doc. 13, PageID 1795.) Plaintiff further contends that the ALJ "crossed the line by acting as his own medical expert in substituting his lay opinion for the medical interpretation of Dr. Bennett." (*Id.*). But Plaintiff's assertions are insufficient to overcome the substantial evidence standard. The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004)). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." (*Id.,* quoting *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)). Thus, the ALJ's decision may be affirmed even if substantial evidence in the record supports the opposite conclusion. *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

Here, the ALJ relied on substantial evidence to support his conclusions, which is evidence adequate to support his decision to assign little weight to Dr. Bennett's opinion. Although the record contains some objective and clinical medical findings that arguably

11

provide some support for Dr. Bennett's opinion, the ALJ acknowledged and evaluated these findings in the decision, as discussed above. The ALJ compared these findings to contradictory examination findings and objective testing in the record, and he concluded that the balance of the evidence did not support Dr. Bennett's opinion. The Court concludes that the ALJ based his decision to assign little weight to Dr. Bennett's opinion upon substantial evidence in the record.

Plaintiff further contends that the ALJ "is not permitted to substitute his interpretation of the objective evidence—like MRIs—for that of the treating source" and that the ALJ "is not qualified to interpret raw medical data in functional terms." (Doc. 13, PageID 1795.) But the ALJ did not interpret the objective medical data beyond his ability. The regulations require the ALJ to evaluate the medical evidence to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 416.945(a)(3); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (stating, "the ALJ is charged with the responsibility of evaluating the medical evidence"); *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC . . . . An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

In this case, the MRI reports of Plaintiff's cervical and lumbar spine were read and interpreted by a radiologist. (Doc. 9-8, PageID 970, 1039.) The ALJ's conclusions regarding Plaintiff's cervical and lumbar spine condition are consistent with the radiologists' interpretations of these reports. Therefore, the ALJ did not interpret raw

medical data beyond his ability. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x. 719, 727 (6th Cir. 2013). Instead, the ALJ relied on the radiologists' interpretations and conclusions—and considered other objective examination findings, imaging, and EMG testing—to conclude that Plaintiff is limited to the reduced range of sedentary work described in the RFC. (Doc. 9-2, PageID 62-78.) This conclusion is supported by substantial evidence in the record.

### B. Chronic Pain

Finally, Plaintiff argues that the ALJ's analysis of the evidence is "problematic because it focuses almost exclusively on specific functional abilities—like how much can [Plaintiff] stand, walk, sit—without properly recognizing that [Plaintiff's] primary diagnosis throughout the record is chronic pain, which precludes her ability to sustain full-time employment at any exertional level." (Doc. 13, PageID 1796.)

This assertion is not well-taken. "The mere diagnosis of [an impairment] … says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)). Plaintiff's chronic pain diagnosis does not automatically qualify her as disabled. Further, the regulations direct the ALJ to evaluate the functional abilities that Plaintiff specifically challenges:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

13

20 C.F.R. § 416.945(b).

Accordingly, although Plaintiff maintains the ALJ should have weighed the opinion evidence differently, substantial evidence supports the ALJ's conclusions. The ALJ's explanation for assigning little weight to Dr. Bennett's opinion was within the zone of reasonable choices. Although Plaintiff does not specifically challenge the ALJ's symptom severity analysis, this Court finds that the ALJ evaluated Plaintiff's symptom severity—including her pain complaints—pursuant to the applicable regulations, including Social Security Ruling 16-3p. 2017 WL 5180304, *3 (Oct. 25, 2017) (effective March 28, 2016). The ALJ further provided reasonable explanations, supported by substantial evidence, for how he weighed the evidence and why he limited Plaintiff to the reduced range of sedentary work in the RFC.  Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 13) is OVERRULED;
2. The Court AFFIRMS the Commissioner's non-disability determination; and
3. The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge